# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRANDI REED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:20-CV-00535-CLS** |
| | ) | |
| **CITY OF DECATUR, ALABAMA;** | ) | |
| *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

The complaint filed in this case by Brandi Reed asserts claims against her former employer, the City of Decatur, Alabama, as well as that municipality's Mayor, Tab Bowling, and its Chief of Police, Nate Allen.  She claims that those defendants subjected her to gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.  *See* doc. no. 1 (Complaint), ¶¶ 21-24 (Gender Discrimination); *id*., at ¶¶ 25-27 (Retaliation).  She also asserts a claim under 42 U.S.C. § 1983 for violation of her constitutional right to equal protection of the laws.  *Id*., at ¶¶ 28-24 (*sic*:  ¶¶ 28-30).

This opinion addresses the defendants' motion to dismiss, which contends that: the complaint is an impermissible "shotgun pleading," and fails to state a claim upon which relief can be granted; the Title VII claims against Mayor Bowling and Chief

Allen are not maintainable as a matter of law; the official capacity claims against those same defendants are redundant; and, the Mayor and Police Chief are entitled to "qualified immunity" from the individual capacity claims asserted against them under 42 U.S.C. § 1983.  *See* doc. no. 2.  Upon consideration of the complaint, motion to dismiss, and the parties' briefs,[1] the court concludes that the motion should be granted, but only in part.

## I.  PLAINTIFF'S ALLEGATIONS AND CLAIMS

The first twenty paragraphs of plaintiff's complaint consist of an introductory statement (paragraph 1), a jurisdictional section (paragraphs 2 through 4), a section identifying the parties (paragraphs 5 and 6), a section stating the relevant facts (paragraphs 7 through 17), and a section describing plaintiff's satisfaction of the administrative prerequisites to her Title VII claims (paragraphs 18 through 20).  The remaining paragraphs are divided among three Counts.

## A.    Factual Allegations

Plaintiff's recitation of relevant facts begins with a simple, declarative sentence stating that she began her employment with the Decatur, Alabama, Police Department during June of 2012, at the rank of "patrol officer."  *See* doc. no. 1 (Complaint), ¶ 7.

---

[1] *See* doc. no. 3 (Brief in Support of Motion to Dismiss); doc. no. 9 (Response to Motion to Dismiss); doc. no. 12 (Reply in Support of Motion to Dismiss).

The quality of her remaining factual statements degenerates quickly, and is no paragon of pleading excellence.

8.   While Plaintiff was working as a patrol officer, a DPD ["Decatur Police Department"] supervisor [*name not provided*] informed her that her immediate supervisor [*name also not provided*] was micromanaging her, but not micro-managing male officers.   The micromanagement of Plaintiff was unrelated to any concerns about the quality of Plaintiff's work.   Plaintiff personally observed actions by her immediate supervisor that demonstrated he was micro-managing her but not micro-managing male officers.   [*No examples of the alleged "micromanaging" were provided; the supervisory actions "personally observed" by plaintiff that allegedly constituted "micro-management" were not stated; none of the "male officers" who allegedly* <u>were</u> <u>not</u> *subjected to similar "micro-management" were identified; and, plaintiff fails to state whether those male officers were equivalent to her in all relevant respects*:  *e.g., rank, experience, duties, etc.*]

9.   Also while Plaintiff was working as a patrol officer, Plaintiff was denied a transfer from the "zone" to which she was assigned to another "zone" although such requests made by male officers were routinely granted.   There was no gender-neutral reason for the denial of Plaintiff's request.   [*This paragraph is deficient in several respects*: *e.g., the date on which plaintiff requested, but was denied, a transfer is not provided; the term "zone" is not defined* (*e.g., ¿ does it relate to geographical areas* ?); *there is no explanation of why one "zone" might be preferable to another; none of the male officers who allegedly were "routinely" allowed transfers were identified; and, plaintiff does not state whether those male officers were comparable to her in all relevant respects*:  *e.g., rank, experience, duties, etc.*]

10.   In or about [*some unspecified date during calendar year*] 2017, Plaintiff was assigned to the Narcotics Division of the DPD. While working in the Narcotics Division, Plaintiff's rank was "Investigator."   During the time she worked in the Narcotics Division, Plaintiff's supervisors [*neither the beginning and ending dates of*

plaintiff's assignment to the Narcotics Division — nor the names of her *"supervisor**s**" (plural)* *while assigned there — were provided*] told her that she was being treated differently because she was a female [*examples of the alleged differential treatment were not provided,*] while one supervisor [*name not provided*] told her [*date not provided*] that he viewed her as a "daughter figure."  Plaintiff reported those comments [¿ *which of the foregoing "comments"* ?] to Defendant [*Chief*] Allen, who shortly thereafter [*date not provided*] disbanded the Narcotics Division. Plaintiff was then reassigned the rank of "patrol officer" and lost the opportunity to work and be compensated for additional overtime hours [*there is no explanation of why plaintiff's assignment to the Narcotics Division presented an "opportunity to work and be compensated for additional overtime hours"*].

10.  In or about June 2018, the Plaintiff received a summons to appear in the Hartselle, Alabama Municipal Court ("municipal court") on a claim of harassment.  [*No information about the charge (e.g., the date, time, and place of the alleged harassment; the nature of the conduct that allegedly constituted "harassment"; the name of the alleged victim), or the outcome of the court proceeding is provided. Instead, the reader must wait until ¶ 23 of Count I, and ¶ 29 of Count III, to be told that plaintiff allegedly was acquitted of the charge.*]

11.  Following Plaintiff's receipt of the summons, Defendant [*Chief*] Allen removed Plaintiff from her duties as a patrol officer and assigned her to administrative duties [*no date of the reassignment is provided*].  While on administrative duty, Plaintiff was assigned to work the front desk of DPD, where she interacted with the public on a daily basis.  Also while on administrative duty, Plaintiff was initially denied the use of her patrol vehicle which was re-assigned to a male officer. Plaintiff was also initially denied the use of her computer was not permitted to attend any training offered by any law enforcement agency while Plaintiff was on duty.  Plaintiff was also initially denied the opportunity to earn additional income while she was on administrative duty.

12.  During the time that Plaintiff was assigned to administrative

duty, she began informing her supervisors [*names of the "supervisor**s**"* (plural) *not provided*] that she was being treated differently because she was a female.  After she informed her supervisors [*date not provided*], the Plaintiff's computer was returned to her [*date not provided*], her ability to earn additional income was restored [*date not provided, and, no explanation is provided of how "her ability to earn additional income was restored"*], and her patrol vehicle was re-assigned to her [*date not provided*].

13.  Male DPD officers who were on administrative duty were allowed to continue the use of their vehicles and computers as well as to attend training offered by law enforcement agencies. [*The names and pertinent characteristics of the male police officers allegedly accorded preferential treatment were not provided, nor is it stated whether the male comparators were assigned to administrative duties for similar reasons: e.g., receipt of a summons to appear in some court to answer a charge of "harassment" or similar complaint.*]

14.  Defendant [*Chief*] Allen met with Plaintiff in January 2019 and informed her that she would not be terminated [*no explanation of why "termination" was an issue is provided*].  Defendant Allen instructed Plaintiff to meet with Defendant [*Mayor*] Bowling and inform him of the problems she had encountered because she was being treated differently.

15.  Plaintiff followed Defendant Allen's instructions and met with Defendant Bowling [*date not provided*], informing him of the ways in which she had been discriminated against due to her gender [*examples not provided*].

16.  In or about [*some unspecified date during the month of*] January 2019, Plaintiff received a letter from Defendant Bowling informing her that her employment had been terminated.

17.  Male officers at DPD [*names not provided*] have been arrested for various crimes [*descriptions of the "various crimes" for which the unidentified male officers were "arrested" were not provided*]

and yet were not terminated.[2]   Indeed, some of the male officers who have been arrested for various crimes [*in addition to omitting the names of the male officers, and a description of the crimes for which each was "arrested," it is not stated whether the officers were convicted or acquitted*] have been promoted within the DPD [*names, ranks, years of service, and other facts relevant to consideration of the propriety of the alleged promotions were not provided*].

Doc. no. 1 (Complaint), ¶¶ 8-17 (alterations and footnote supplied).

Of course, a complaint is required to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed. R. Civ. P.  Even so, the numerosity and importance of the facts omitted in the present basic pleading serve only to underscore how to push that forgiving pleading principle to the point of rebuke.

## B.   Administrative Prerequisites

Following her termination, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and alleged that the City of Decatur, Alabama, had subjected her to gender discrimination, *harassment*, and

---

[2] Plaintiff's EEOC Charge provided more information than this paragraph of her complaint, but it still is no paragon of descriptive excellence:  *i.e.*,

Male officers Lt. Archie Leston, SGT Joseph Renshaw, SGT Jason Hyder, and Crime Scene Investigator/Housing Jonathan Lowery have been through court proceedings for domestic violence, assault, and falsifying evidence yet they were not discharged.  Some of these same officers [¿ *which officers* ?] have been arrested multiple times [¿ *for what* ?]and were later promoted to positions of higher rank.

Doc. no. 11-1 (EEOC Charge), at 4 (alterations supplied).

retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

I am a female. I was hired by the above named employer [*City of Decatur*] in 2012 as a Police Officer. During my employment, I experienced multiple encounters of discrimination *and harassment* from my supervisors. The most recent incident occurred when false allegations were brought against me. I did not commit the alleged act and it was later determined that I had been the victim of multiple crimes, not the offender. The incident resulted in a dismissal. I was informed that I would not be disciplined, but I was removed from my normal duties, reassigned to administrative duties, and made to work the departments [*sic*] front desk. My patrol vehicle was taken from me along with the accessories needed to perform my official duties and I was not allowed to perform off-duty work.

I approached the command staff and supervisors on multiple occasions to voice my concerns of how I was being treated differently due to my sex. I continued to questions the punishment for weeks, but I was presented with excuses and ignored.

Police Chief Nathanial Allen met with me mid-January 2019 and informed me that I would not be terminated. I was instructed to tell Mayor Tab Bowling that issues I had of being treated differently due to my sex. After ensuring me I would not be terminated, I presented my concerns regarding *harassment* and informed Mayor Bowling I felt I was being discriminate against. On January 29, 2019, I received a letter of termination.

Male officers Lt. Archie Leston, SGT Joseph Renshaw, SGT Jason Hyder, and Crime Scene Investigator/Housing Jonathan Lowery have been through court proceedings for domestic violence, assault, and falsifying evidence yet they were not discharged. Some of these same officers have been arrested multiple times and were later promoted to positions of higher rank.

I believe I was discriminated aagainst because of my sex (female) and retaliated against for engaging in protected activity, in violation of

Title VII of the Civil Rights Act of 1964, as amended.

Doc. no. 11-1, at 3-4 (EEOC Charge).  The EEOC dismissed plaintiff's charge a little over six months later,[3] but simultaneously notified her of her right to file suit within ninety days of her receipt of the notice of dismissal.[4]  Plaintiff then commenced the present action.

## C.    Plaintiff's Claims

The caption of plaintiff's complaint[5] indicates that her claims are asserted against not only her former employer, the City of Decatur, Alabama, but also "Tab Bowling *individually and in his official capacity as* Mayor of Decatur, Alabama, and Nate Allen *individually and in his official capacity as* Chief of Police of the Decatur Police Department."  Doc. no. 1, at 1 (Caption of Complaint) (ALL CAP letters and boldface emphasis omitted, italicized emphasis supplied).[6]

---

[3] *Id*., at 1 (Jan. 29, 2020 Dismissal and Notice of Rights) ("The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.").

[4] *Id*. (Notice of Suit Rights); *see also id*. at 2 (Private Suit Rights).

[5] Federal Rule of Civil Procedure 10(a) provides that:  "Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation [*i.e.*, Rule 7(a) lists the pleadings that are allowed:  *e.g.*, a complaint; an answer to a complaint; *etc.*].  The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties" (alteration supplied).

[6] Note well the section of the complaint describing the parties, and alleging that

Defendant Tab Bowling ("Bowling") is the current elected mayor of the City and Defendant Nate Allen ("Allen") is the Chief of Police of the DPD.  *At all times*

8

Count I then alleges the following claim of sex discrimination under Title VII of the Civil Rights Act of 1964:

> 21. *Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs [i.e., ¶¶ 1 – 20] with the same force and effect as if fully set out in specific detail herein.*
>
> 23. Plaintiff belongs to a protected group as she is female.
>
> 23. Defendants City, Bowling, and Allen willfully discriminated against Plaintiff because of her gender, in violation of Title VII of the Civil Rights Act of 1964, as amended[,] 42 U.S.C. § 2000e-2. *Specifically, defendants City, Bowling, and Allen discriminated against Plaintiff by terminating her following her acquittal in municipal court while not terminating male officers who have been arrested for various offenses.*
>
> 24. As a proximate result of Defendant City, Bowling, and Allen's violations of Plaintiff's civil rights, plaintiff has suffered damages, including loss of income and benefits; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover her compensatory damages pursuant to 42 U.S.C. §§ 1981a and 2000e-5.

*Id*. ¶¶ 22-24 (emphasis and alterations supplied).

Count II alleges a claim for retaliation under Title VII:

> 25. *Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs [i.e., ¶¶ 1 – 24] with the same force and effect as*

---

*relevant to this action, the City acted through Bowling and Allen and the acts, edicts, and practices of these persons represent the official policies of the City.* At all times relevant to this action, the City was Reed's "employer" within the definition o [*sic*] 42 U.S.C. § 2000e(b) and a "person" within the definition of 42 U.S.C. § 1983.

Doc. no. 1 (Complaint), ¶ 6 (emphasis supplied).

*if fully set out in specific detail herein*.

26.   Defendants City, Bowling, and Allen retaliated against Plaintiff after she, while on administrative duty, informed her supervisors that she was being treated differently.   *Specifically, defendants City, Bowling, and Allen retaliated against Plaintiff by terminating her*.   Defendants' conduct against Plaintiff constitutes retaliation under Title VII which makes it unlawful for an employer to discriminate against an employee who opposes unlawful practices.

27.   As a proximate result of Defendants' willful conduct, Plaintiff has suffered extreme harm including, but not limited to pain, anxiety, humiliation, mental anguish and suffering.

*Id*. ¶¶ 25-27 (emphasis supplied).

Finally, Count III asserts a claim under 42 U.S.C. § 1983, for defendants'

alleged violation of the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution:

28.   *Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs [i.e., ¶¶ 1 – 27] with the same force and effect as if fully set out in specific detail herein*.

29.   *In the discriminatory act of terminating Plaintiff following her acquittal in municipal court but not terminating male DPD officers who had also been arrested for alleged criminal offenses*, Defendants City, Bowling, and Allen, acting under color of state and local law, *denied to Plaintiff her Constitutional right to equal protection of the law*, *to be free from gender discrimination*, as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

24 [*sic*:   ¶ **30**].   As a proximate result of Defendants City, Bowling, and Allen's violations of Plaintiff's Constitutional rights,

10

Plaintiff has suffered damages, including loss of income and benefits; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial.  Plaintiff is entitled to recover her compensatory damages pursuant to 42 U.S.C. §§ 1981a and 2000e-5.

*Id.*, ¶¶ 28-30 (emphasis and alterations supplied).

**D.    Prayer for Relief**

The relief requested by plaintiff for each of her claims is summarized at the conclusion of the complaint as follows:

> **WHEREFORE, THE PREMISES CONSIDERED**, Plaintiff respectfully prays for judgment, both jointly and severally, against the Defendants named in the Complaint in an acount to be determined by a struck and empaneled jury.  Plaintiff prays that this Court provide the following additional relief:
>
> 1.    Issue a declaratory judgment that the acts, practices, and policies of defendants City, Bowling, and Allen were in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Constitution of the United States;
>
> 2.    Issue a permanent injunction enjoining defendant City, its officers, employees, and all of those acting in concert with defendants City, Bowling, and Allen and at their direction, from continuing to engage in the unlawful and discriminatory policies, acts and practices complained of herein;
>
> 3.    Enter an Order requiring Defendants to make Plaintiff whole by awarding Plaintiff compensatory and punitive damages in an amount to be proven at trial. [*sic*]

11

4.      Award the costs of this action, including reasonable attorneys' fees, as provided by 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988; and

5.      Award pre-judgment and post-judgment interest on all amounts awarded in this action.

Doc. no. 1 (Complaint) at (unnumbered pages) 8-9.

## II.  DISCUSSION

### A.      Shotgun Pleadings

Defendants contend that plaintiff's complaint constitutes an impermissible, "shotgun pleading."  As Judge Carnes observed in a (for him) typically excellent decision, summarizing and clarifying the principles outlined in more than sixty Eleventh Circuit opinions published during the three decades between 1985 and 2015, complaints that violate either Federal Rules of Civil Procedure 8(a)(2) or 10(b), or both,[7] "are often disparagingly referred to as 'shotgun pleadings.'"  *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  The most common pleading to which that pejorative label is applied is "a complaint containing multiple counts *where each count adopts the allegations of all preceding counts,*

---

[7] Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 10(b) further provides that:  "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence — and each defense other than a denial — must be stated in a separate count or defense."

causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321 (emphasis supplied). That is precisely what plaintiff has done here, by stating in the first paragraph of each Count that she "re-alleges and incorporates by reference all of the foregoing paragraphs with the same force and effect as if fully set out in specific detail herein." Doc. no. 1 (Complaint) ¶¶ 21; *see also id.* ¶ 25 (same); *id.* ¶ 28 (same).

The next most-common type of "shotgun pleading" discussed in Eleventh Circuit opinions

> is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. *The third type of shotgun pleading* is one that commits the sin of not separating into a different count each cause of action or claim for relief. *Fourth, and finally*, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.*

*Id.* at 1321-23 (footnote citations omitted, emphasis supplied).

Plaintiff responds by saying that, while each count of her complaint does "re-allege[] and incorporate[] by reference all of the foregoing paragraphs with the same

13

force and effect as if fully set out in specific detail herein,"[8] the effect is not the same as those condemned in *Weiland* and its cited opinions.  Instead, plaintiff contends that she simply intended to incorporate her factual allegations, without re-stating them and, thereby, unnecessarily increasing the length of her complaint.

As in *Weiland*, the present complaint does not present "a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."  *Id.* at 1324.  Further, as noted in Part I.A. of this opinion, *supra*, while the specificity of plaintiff's factual allegations are undeniably deficient, it is not difficult to parse from the fact section which events are relevant to each claim. Defendants' motion to dismiss addresses the facts accordingly, and makes clear that they are on sufficient notice of the allegations against them.

Defendants also allege that the complaint's consolidated prayer for relief, which is not tethered to any specific claim, is a characteristic of a "shotgun pleading." *See* doc. no. 3 (Brief in Support of Motion to Dismiss), at 7 n.1 (citing *Al-Rayes v. Willingham*, No. 3:15-cv-107-J-34-JBT, 2016 WL 6080826, at *3 (M.D. Fla. Aug. 15, 2016); *see also Gayton v. Atlas Copco North America, LLC*, No. 1:15-cv-1339-VEH, 2015 WL 7273005, at *4 (N.D. Ala. Nov. 18, 2015) (Plaintiff "must not

---

[8] Doc. no. 1 (Complaint), ¶ 21; *see also id*. ¶ 25 (same); *id*. ¶ 28 (same).

14

confusingly place her prayer for relief at the end of her complaint . . . without a specific reference to the claims upon which the requested remedies are plausibly based."). Defendants do not allege, however, that they are actually confused by plaintiff's prayer for relief. Accordingly, this court concludes that plaintiff's complaint does not constitute an impermissible, shotgun pleading.

## B.    Failure to State a Claim

The Federal Rules of Civil Procedure permit a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That rule must be read together with Rule 8(a). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Defendants argue that plaintiff's complaint should be dismissed because all of her allegations are conclusory, and do not state a plausible claim under *Twombly* and *Iqbal*. Discussion of that contention will be divided between plaintiff's Title VII and Section 1983 claims.

### 1.    Title VII gender discrimination claim

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to discriminate against any person with respect to his or her "compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  A *prima facie* claim of gender discrimination under that statute requires the plaintiff to show that: (1) she is a member of a protected class (*i.e.*, a female); (2) she experienced an adverse employment action (*i.e.*, termination); (3) she was qualified to perform the position from which she was fired; and (4) she was treated less favorably than "similarly situated" male employees.  *See*, *e.g.*, *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220-21 (11th Cir. 2019).  The Supreme Court has characterized the *prima facie* elements of a Title VII claim as "an evidentiary standard" for evaluating the sufficiency of a plaintiff's circumstantial proof of discrimination, but "not a pleading requirement."  *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002).  Nevertheless, the *prima facie* elements can be usefully employed as a point of reference when discussing the sufficiency of plaintiff's claim.

Defendants specifically allege that plaintiff's complaint does not contain sufficient facts to show that she was treated differently from similarly situated male Police officers.  Indeed, plaintiff alleges only vaguely that unnamed "male officers" who allegedly had been "arrested for various offenses" were not discharged,[9] but she neither describes the "offenses" charged against each unnamed officer, nor (as noted

---

[9] Doc. no. 1 (Complaint), ¶ 23.

in the discussion of Complaint paragraph 10, *supra*) provides any information concerning the municipal court charge against *her*, its specific outcome, or its comparison to the "offenses" for which male police officers were "arrested."[10]

Even so, the cases relied upon by defendants are distinguishable. For example, in *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269 (11th Cir. 2008), plaintiff simply alleged that the "use of the testing procedures was unprecedented." *Id.* at 1275. To correct the deficiency, the Eleventh Circuit wanted plaintiff to identify one "instance in which a similarly situated contractor completed its project without being subject to the same testing procedures." *Id.* Here, plaintiff has alleged that male officers who were "arrested for various offenses" were not terminated, but she failed to identify any of the male comparitors, or the offenses for which each was arrested, or how those offenses compared to the "claim of harassment" for which plaintiff "received a summons to appear in the Hartselle, Alabama Municipal Court."[11] Even so, she alleged that male officers assigned to administrative duty were permitted to retain the use of their computers and patrol vehicles, while she was not.[12] Those allegations are sufficient to survive a motion to dismiss her gender discrimination claim. But, just

---

[10] Plaintiff's EEOC Charge provides names of male Police officers who allegedly had been charged with "domestic violence, assault, and falsifying evidence," but "not discharged": see note 2, *supra*.

[11] Doc. no. 1 (Complaint), ¶ 10.

[12] *See id.*, ¶¶ 13, 17.

barely.   Consequently, while this court will not dismiss Count I of Plaintiff's complaint for failure to state a claim upon which relief can be granted, she will be required to file an amended complaint that corrects the deficiencies outlined previously.

### 2.    Title VII retaliation claim

"A plaintiff asserting a retaliation claim under Title VII must show that:   (1) [she] engaged in statutorily protected activity; (2) [she] suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action."   *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (alterations supplied) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)).   Defendants argue that plaintiff's claim that defendants "retaliated against Plaintiff after she, while on administrative duty, informed her supervisors that she was being treated differently . . . by terminating her"[13] is conclusory, and does not state a plausible Title VII claim.   Nevertheless, "[c]lose temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated."   *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Bass v. Board of County Commissioners, Orange County, Florida*, 256 F.3d 1095, 1119 (11th Cir. 2001)).   Plaintiff alleged

---

[13] *Id.* ¶ 26.

that she met with Mayor Bowling in January of 2019 to inform him of the ways in which she felt she had been discriminated against because of her gender.  Later that same month, plaintiff was terminated.[14]  Those allegations are sufficient to survive a motion to dismiss, but plaintiff will again be required to file an amended complaint that corrects the pleading deficiencies previously noted.

### 3.   Plaintiff's Title VII individual capacity claims

The first two counts of plaintiff's complaint assert Title VII claims against not only her employer, the City of Decatur, Alabama,[15] but also Mayor Bowling and Chief Allen.  Such individual, or "personal-capacity" claims are not maintainable as a matter of law, as the Supreme Court recognized long ago in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985):

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  See, *e.g.*, *Scheuer v. Rhodes*, 416 U.S. 232, 237–238, 94 S. Ct. 1683, 1686–1687, 40 L. Ed. 2d 90 (1974).  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 2035, n.55, 56 L. Ed. 2d 611 (1978).  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon* [*v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 878, 83 L. Ed.

---

[14] *Id.* ¶¶ 15-16.

[15] *See*, *e.g.*, *id*. ¶ 1 (alleging that plaintiff was an employee of "the Decatur Police Department, a department of the City of Decatur, Alabama").

> 2d 878 (1985)].  *It is not a suit against the official personally*, *for the real party in interest is the entity*.  Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. at 165-66 (alteration supplied, footnote omitted); *see also*, *e.g.*, *Yeldell v. Cooper Green Hospital, Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) ("Title VII actions are not appropriately brought against government officials in their personal capacities."); *Busby v. City of Orlando*, 931 F.2d 764, 722 (11th Cir. 1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act. . . .  We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.") (citations and footnote omitted).

Accordingly, plaintiff's Title VII claims against Mayor Bowling and Chief Allen in their individual capacities are due to be dismissed.[16]

---

[16] Plaintiff's contention that she can state Title VII claims against Mayor Bowling and Chief Allen in their *official capacities* also is badly wrong, as the Eleventh Circuit held when adopting the Fifth Circuit's opinion in *Harvey v. Blake*, 913 F.2d 226 (5th Cir. 1990), which determined that

> no qualified immunity exists for individuals sued under Title VII.  [*Id*. at 227].  No immunity from such actions exists because such claims must be made against the municipal officer in his official capacity, not in his individual capacity.  *See id*. at 227–28.  "Because the doctrine of qualified immunity protects a public official from liability for money damages in [his or] her individual capacity only, the doctrine is inapplicable in the Title VII context."  *Id*. at 228.  Therefore, a qualified immunity

### 4.    Section 1983 equal protection claim

Count III of plaintiff's complaint is based upon 42 U.S.C. § 1983, which requires a plaintiff to "allege facts showing that the defendant's act or omission, done under the color of state law, deprived [her] of a right, privilege, or immunity protected by the Constitution or the laws of the United States." *Emory v. Peeler*, 756 F.2d 1547, 1554 (11th Cir. 1985) (alteration supplied, citation omitted).

### a.    Individual capacity claims and "qualified immunity"

Mayor Bowling and Chief Allen contend that they are entitled to "qualified immunity" from the Section 1983 claim asserted against them in Count III of the plaintiff's complaint.  The doctrine of qualified immunity protects state, county, or municipal governmental officials acting within their discretionary authority from liability in their personal, or individual, capacities for money damages under 42 U.S.C. § 1983, but only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, e.g.*, *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (same).  The doctrine "is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of

---

analysis is unnecessary under Title VII.

*Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (alteration supplied).

litigation.'" *Iqbal*, 556 U.S. at 672 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526

(1985)).[17]

> Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it requires "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. A plaintiff survives a motion to dismiss only if his complaint alleges "sufficient factual matter, accepted as true, [that] state[s] a claim to relief that is plausible on its face." *Id*. (citation and quotation marks omitted).

> To decide whether a complaint survives a motion to dismiss, we use a two-step framework. *See id*. at 678-81, 129 S. Ct. 1937; *Franklin* [*v. Curry*], 738 F.3d [1246,] 1250-51 [(11th Cir. 2013)]. First, we identify the allegations that are "no more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937. Conclusory allegations are not entitled to the assumption of truth. *Id*. Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations "plausibly give rise to an entitlement to relief." *Id*.

*McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (alterations supplied).

Plaintiff's claim does not comply with that test. She alleges simply that, by "the

discriminatory act of terminating Plaintiff following her acquittal in municipal court

but not terminating male . . . officers who had also been arrested for alleged criminal

offenses, Defendants City, Bowling, and Allen, acting under color of state and local

law, denied to Plaintiff her Constitutional right to equal protection of the law . . . ."

---

[17] As the majority opinion in *Iqbal* observed: "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring)).

Doc. no. 1 (Complaint), ¶ 29. No factual detail about what Mayor Bowling or Chief Allen did, or failed to do, is provided. As defendants observed, such "conclusory and formulaic allegations are materially indistinguishable from those allegations against FBI Director Mueller in *Iqbal* and the mayor and police chiefs in *McCullough*." Doc. no. 3 (Brief in Support of Motion to Dismiss), at 22. Consequently, this aspect of the defendants' motion is due to be granted.

### b.     Official capacity claims

Count III of plaintiff's complaint, like the claim alleged in Count I, essentially alleges that defendants interfered with her federal statutory right to be free from unlawful gender discrimination. "When section 1983 is used as a parallel remedy for violation of section 703 of Title VII [42 U.S.C. § 2000e-2], the elements of the two causes of action are the same." *Cross v. Alabama Department of Mental Health and Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) (quoting *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)) (alteration in original).

Defendants argue that the official capacity claims against Mayor Bowling and Chief Allen are due to be dismissed because they are redundant. *See, e.g.*, *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the

State itself."); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Higdon v. Fulton County, Georgia*, 746 F. App'x 796, 799 (11th Cir. 2018) ("[O]fficial-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant.") (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

Plaintiff argues, on the basis of *Ex parte Young*, 209 U.S. 123 (1908), that a suit seeking prospective injunctive relief, and challenging the constitutionality of an official's actions, is not a suit against the state or municipality itself, but only the officials in question and, therefore, the official capacity claims are not redundant. This exception to Eleventh Amendment immunity applies to official-capacity actions brought under 42 U.S.C. § 1983 for prospective injunctive relief; accordingly, count three will remain pending against defendants Bowling and Allen in their official capacity, but only as to plaintiff's prayer for prospective injunctive relief. *See Will*, 491 U.S. at 71 n.10.

The Eleventh Amendment and, therefore, the *Young* doctrine do not apply to actions brought under Title VII, however. The Supreme Court held in *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), that Congress successfully abrogated Eleventh

24

Amendment immunity under Title VII.  *See id.* at 457.  Additionally, as discussed in Part II.B.3 of this opinion, *supra*, individual, or personal-capacity claims under Title VII are not maintainable as a matter of law.  *See, e.g., Busby*, 931 F.2d at 772 ("The relief granted under Title VII is against an *employer*, not individual employees whose actions would constitute a violation of the Act.") (emphasis in original).  Accordingly, the official-capacity claims asserted against Mayor Bowling and Chief Allen in Count III are due to be dismissed.

## III.  CONCLUSION

For the reasons stated, defendants' motion to dismiss is due to be granted in part and denied in part.  An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 20th day of August, 2020.

_____
Senior United States District Judge

25